**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

GRIFFIN GILLETTE,

      Plaintiff,

      -v-                    6:26-CV-85 (AJB/ML)

HEATHER ROSS, MICHAEL ROSS AND/
OR HIS ESTATE, and JESSICA ROSS-BUEL,

      Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

## I.    INTRODUCTION

On January 16, 2026, plaintiff Griffin Gillette ("plaintiff"), the operator of a mobile ice cream retailer called Polar Bear Ice Cream, filed this trademark infringement action against defendants Heather Ross, Michael Ross, and Jessica Buel[1] (collectively "defendants"), the owners of ice cream businesses named Polar Bear Homemade Ice Cream & More and Candyland Concession.  Dkt. No. 1.

On March 4, 2026, defendants moved to dismiss the complaint for lack of personal jurisdiction and insufficient service of process under Rules 12(b)(2) and 12(b)(5) of the Federal Rules

---

[1] While the complaint refers to this party as "Jessica Ross-Buel," *see, e.g.*, Dkt. No. 1 ¶ 19, defendants' motion to dismiss and her own declaration in support of dismissal both identify her as "Jessica Buel."  *See generally* Dkt. Nos. 15-1, 15-5.  The Court will refer to defendant Jessica Buel by her preferred name in this opinion.

of Civil Procedure.  Dkt. No. 15.  The motion to dismiss has been fully briefed, Dkt. Nos. 18, 19, 21, 23, 26, and will be considered on the basis of the submissions without oral argument.[2]

## II.    BACKGROUND

The following facts are taken from the complaint and its attached exhibits, Dkt. No. 1, and will be assumed true for the purpose of assessing the motion to dismiss.

Plaintiff owns and operates Polar Bear Ice Cream, a mobile ice cream stall, at fairs and festivals throughout the United States.  Dkt. No. 1 ("Compl.") ¶¶ 16, 44, 57.  Plaintiff was first granted a license to use the Polar Bear mark in November 2008 by EG Shultis, then the owner of the mark, *id.* ¶ 41, and has continuously used the mark from February 2009 until the present to sell ice cream, desserts, and other goods via his mobile ice cream stall.  *Id.* ¶¶ 42, 43.

On November 12, 2025, plaintiff's license to use the Polar Bear mark was memorialized in writing and signed by EG Shultis and plaintiff.  Compl. ¶ 46.  Shortly thereafter, EG Shultis sold plaintiff all of his rights, title, and interests in the Polar Bear mark and associated goodwill. *Id.* ¶ 49.  Plaintiff currently owns New York state registrations and U.S. registration applications for the Polar Bear trademark that cover certain goods and services, including the production and sale of desserts and the retail sales of such goods at fairs and festivals.  *Id.* ¶¶ 3, 4.

Defendants Heather Ross and Jessica Buel own and operate an ice cream shop in Oneonta, New York named Polar Bear Homemade Ice Cream & More, Compl. ¶ 7, and a corresponding mobile ice cream stall, Candyland Concession, that they operate at fairs and festivals throughout the United States.  *Id.* ¶ 6.  Michael Ross jointly owned this business with his wife, Heather Ross,

---

[2]  On April 14, 2026, defendants sought and received leave to file a supplemental reply.  *See* Dkt. No. 25.  Plaintiff also sought and received permission to file a sur-reply.  *See id*.  The Court has considered the additional filings, Dkt. Nos. 21, 22, 23, 24, 26, in deciding the pending motion.

until his death in October 2025.  Defs.' Mot., Dkt. No. 15-5 at 7.[3]  According to plaintiff, defendants' ice cream and desserts are of a lower quality than plaintiff's and their impermissible use of the Polar Bear mark has and will continue to negatively impact plaintiff's business.  Compl. ¶¶ 72–73, 79–81, 109.

As an example of the harmful effects to his business, plaintiff alleges that he and defendants were both vendors at the 2025 Washington County Fair.  Compl. ¶ 85.  Despite defendants' contract with the fair's organizers to sell only milkshakes and root beer floats, and to operate under the name Candyland Concession, *id.* ¶¶ 89–90, defendants sold ice cream, milkshakes, floats, slushies, and other items, and their stall was branded with the phrase "Polar Bear."  *Id.* ¶ 92.

On December 5, 2025, plaintiff's counsel contacted defendants to inform them that they were violating plaintiff's rights through their continued unauthorized use of the Polar Bear mark.  Compl. ¶¶ 102–04.  In response, defendants asserted they were the successors in interest to the Polar Bear mark, allegedly having purchased it from its prior owners in 2015, and refused to stop using the mark.  *Id.* ¶¶ 107, 111; Dkt. No. 1-7 at 2.

On January 16, 2026, plaintiff filed this action.  Dkt. No. 1.  The Clerk of Court issued summonses for each defendant on January 22, 2026.  Dkt. No. 8.  On February 19, 2026, plaintiff filed an affidavit of service and the executed summonses stating that on February 11, 2026, the process server, Jonn Russell, served defendants Michael Ross and Heather Ross by delivering the summons, complaint, and General Order #25 to their son, who is a person of suitable age and discretion, that Russell personally served Jessica Buel at her home on the same day, and that he mailed copies of the documents to each of their addresses.  Dkt. Nos. 13, 14.

---

[3]  Pagination corresponds to CM/ECF headers.

After defendants moved to dismiss on insufficiency-of-service grounds, plaintiff filed an additional affidavit of service on March 25, 2026, stating that Russell completed a second round of service on Heather Ross and Jessica Buel via personal service, and on Michael Ross and/or his Estate by posting copies of the documents on the front door of his purported residence. Dkt. No. 17. Russell's sworn declaration states that when he arrived at defendants' place of business to complete this second round of service, Jessica Buel waved at him through the window and directed him to enter through a side door, and Heather Ross exclaimed "We've been expecting you!" Dkt. No. 18-22 ¶¶ 57, 60.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(2)

Rule 12(b)(2) authorizes a defendant to move for pre-answer dismissal of a pleading for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction, a district court has considerable procedural leeway." *Fish v. Oshkosh Def., LLC*, 2023 WL 12023144, at *5–6 (N.D.N.Y. Nov. 13, 2023) (Suddaby, J.) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). The Court may determine the motion based on "affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A.*, 664 F.2d at 904).

- 4 -

**B.     Rule 12(b)(5)**

Rule 12(b)(5) authorizes a defendant to move for pre-answer dismissal of a pleading for insufficient service of process. FED. R. CIV. P. 12(b)(5). "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)). A court considers matters outside the pleadings to assess the sufficiency of service. *See, e.g.*, *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 191 (E.D.N.Y. 2025); *Harkins v. Citizens Bank*, 744 F. Supp. 3d 268, 275 (W.D.N.Y. 2024).

"To determine whether service of process was sufficient, courts look to materials outside the pleadings 'to determine what steps, if any, the plaintiff took to effect service.'" *Egan v. Coventry Health Care Workers Comp., Inc.*, 2026 WL 719180, at *4 (N.D.N.Y. Mar. 16, 2026) (Nardacci, J.) (quoting *Flemming v. Moulton*, 2015 WL 5147035, at *4 (N.D.N.Y. Sept. 1, 2015)). If the court determines that service was insufficient, it may grant plaintiff leave to cure the insufficiency or dismiss the action. *See, e.g.*, *DiFillippo v. Special Metals Corp.*, 299 F.R.D. 348, 353 (N.D.N.Y. 2014) (D'Agostino, J.).

## IV.     DISCUSSION

Defendants have moved to dismiss plaintiff's complaint for failure to timely serve them with process. Dkt. No. 15. According to defendants, Michael Ross must be dismissed as a defendant because he is deceased and has no estate. Defs.' Mot., Dkt. No. 15-5 at 3. As for Heather Ross and Jessica Buel, defendants argue that plaintiff failed to validly effect service on either of them. *Id*. In fact, according to defendants, plaintiff's process server submitted "fraudulent" affidavits of service. *Id*.

Valid service is required before a federal court may exercise personal jurisdiction over a defendant. *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (requiring "procedurally proper" service). "The procedural requirements for proper service are set forth in Federal Rule of Civil Procedure 4 and they are incorporated by Rule 12(b)." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (4th ed.) (cautioning that "questions of personal jurisdiction and service of process are closely interrelated"). As relevant here, a motion under Rule 12(b)(5) "is the proper vehicle for challenging the mode of delivery, the lack of delivery, or the timeliness of delivery of the summons and complaint." *Id.*

### A.     Michael Ross

Defendants argue that the Court lacks personal jurisdiction over Michael Ross because he is deceased and has no estate. Defs.' Mot., Dkt. No. 15-5 at 7. As defendants explain, Michael Ross died on October 31, 2025, before this action was commenced. *Id*. Thus, according to defendants, any purported service on Michael Ross or his estate was invalid under New York law. *Id*. at 9. In response, plaintiff claims that his process server effected valid service on this defendant by means of substitute service on his son, Matthew Ross. Pl.'s Opp'n, Dkt. No. 18-25 at 12.

Upon review, Michael Ross must be dismissed as a defendant from this action. Rule 17 of the Federal Rules of Civil Procedure governs the capacity of a party to sue or be sued in federal court. Under Rule 17(b)(3), "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located[.]" FED. R. CIV. P. 17(b)(3). Thus, New York law applies in this case.

Under New York law, "an estate is not a legal entity and any action for or against the estate must be by or against the executor or administrator in his or her representative capacity." *DuBois v. Beaury*, 2020 WL 7024393, at *1 (N.D.N.Y. Nov. 30, 2020) (Scullin, J.) (cleaned up). In other

words, "a plaintiff is unable to commence an action during the period of time between the death of a potential defendant and the appointment of a representative of the estate" because "the purported action is a nullity." *Hollowell v. Est. of Decaro*, 118 A.D.3d 749, 750 (2d Dep't 2014) (internal citations omitted).

Here, Michael Ross lacks capacity to be sued at this time because he is deceased and no estate has been opened yet. *See DuBois*, 2020 WL 7024393, at *1 (explaining that a plaintiff cannot bring an action against a decedent's estate where, as here, no executor or administrator has been appointed); *see also Vernon v. Maxwell*, 2020 WL 7485195, at *2 n.2 (S.D.N.Y. Nov. 19, 2020) ("[U]nder New York law, a dead person cannot be sued.").

Plaintiff's argument that substituted service was effectuated on Michael Ross's son on February 11, 2026 is unavailing. Pl.'s Opp'n, Dkt. No. 18-25 at 11–12. Valid service on a decedent cannot be made by substituted service unless the person accepting service is the administrator or executor of the decedent's estate. *See Grosso v. Est. of Gershenson*, 822 N.Y.S.2d 150, 150 (2d Dep't 2006); *see also OneWest Bank FSB v. Prestano*, 2015 WL 6205613, at *3 (N.Y. Sup. Ct. Oct. 13, 2015) ("[T]he court is at a loss as to how service on a "dead" person can be made by substituted service . . . . On the date of service, [decedent's son] lacked the legal ability to accept process for the decedent or his Estate as no fiduciary had been appointed."). So Michael Ross must be dismissed for the additional reason that he cannot be served with process. *See Crawford v. Citibank, NA*, 2024 WL 4593431, at *2 (E.D.N.Y. Oct. 28, 2024).

These two conclusions give rise to a third, related problem. Counsel for defendants, Mr. Palmateer, cannot legally represent Michael Ross under New York law at this time. *Vicari v. Kleinwaks*, 157 A.D.3d 975, 976–77 (2d Dep't 2018) ("The death of a party terminates his or her attorney's authority to act on behalf of the deceased party.") (internal citation omitted). The Court

therefore lacks jurisdiction to consider a motion to dismiss purportedly made on Michael Ross's behalf by his former attorney. *Id.*; *see also Ford v. Luckain*, 247 A.D.3d 990, 991–92 (2d Dep't 2026) ("The death of a party divests the court of jurisdiction and stays the proceedings until a proper substitution has been made pursuant to CPLR 1015(a). Moreover, any determination rendered without such substitution will generally be deemed a nullity.") (internal quotation omitted).

As such, the Court will *sua sponte* dismiss Michael Ross from this action. While a court should "not act without first giving" the plaintiff "an opportunity to establish that the court had personal jurisdiction over" the defendant, *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 214 (2d Cir. 2010), here, as discussed above, plaintiff has had such an opportunity and has not made the required showing.

That said, Michael Ross's dismissal will be without prejudice, as plaintiff may be able to bring suit against an administrator or executor if one is later appointed. *See* N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) ("No cause of action for injury to person or property is lost because of the death of the person . . . . For any injury, an action may be brought or continued against the personal representative of the decedent[.]"); *see generally DuBois*, 2020 WL 7024393, at *2 (noting the jurisdictional requirements to petition a New York Surrogate's Court for appointment of a public administrator for an estate).

Accordingly, Michael Ross must be dismissed as a defendant.

**B.      Heather Ross and Jessica Buel**

Defendants argue that plaintiff has failed to validly serve process on Heather Ross and Jessica Buel on either February 11, 2026, the first round of service, or on March 24, 2026, after this motion to dismiss was initially filed. Defs.' Mot., Dkt. No. 15-5 at 7. First, defendants argue that plaintiff's process server, Jonn Russell, could not have possibly served them with process on

February 11, 2026 because: (1) Jessica Buel was not at home and did not look as Russell described in his affidavit; and (2) Heather Ross does not live at the address he visited and he did not leave any papers with her son, who was present at the time. *Id.* at 8–9.

Second, defendants argue that plaintiff failed to serve them with process within sixty days of the filing of the complaint as required by this Court's local rules. Dkt. No. 19 at 6–7. In defendants' view, plaintiff's second round of service was untimely and incomplete because it did not include a copy of General Order #25 as required. Dkt. No. 21 at 1–2. According to defendants, there is an alleged weight difference between the service package that Heather Ross actually received and the weight of a package with an additional stack of blank copy paper (meant to represent General Order #25) added. Dkt. No. 23-1 at 1–2.

Rule 4(e) of the Federal Rules of Civil Procedure governs the service of an individual within a judicial district of the United States. FED. R. CIV. P. 4(e). Service of process pursuant to federal law "may be made by personal delivery, by leaving copies of the summons and complaint at the defendant's dwelling place or usual . . . abode with a person of suitable age and discretion or by delivering the process to an agent authorized . . . to receive service." *Jackson v. County of Nassau*, 339 F. Supp. 2d 473, 476 (E.D.N.Y. 2004) (citing FED. R. CIV. P. 4) (internal quotation marks omitted).

Federal law also "authorize[s] service of process pursuant to the law of the state in which the court is located[.]" *Jackson*, 339 F. Supp. 2d at 476. New York sets forth several acceptable methods for service similar to the federal standards, including by "delivering the summons to the person to be served, or by delivering the summons to a person of suitable age and discretion at the actual place of business, dwelling place, or usual place of abode of the person to be served, along with mailing the summons to the person's last known address of residence." *Weifang Xinli Plastic*

*Prod. v. JBM Trading Inc.*, 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014) (citing N.Y. C.P.L.R. § 308(1)-(2)), *aff'd*, 583 F. App'x 24 (2d Cir. 2014) (summary order).

Plaintiff argues that he has now served defendants with process on two separate occasions, first on February 11, 2026, and second on March 24, 2026. Dkt. No. 26 at 2. As to the first round of service, plaintiff's process server submitted a sworn declaration stating that on February 11, 2026, he served Heather Ross via substituted service on her son, a person of suitable age and discretion, and that he served Jessica Buel via personal service. Dkt. No. 18-22 ¶¶ 15–20, 24–27.

Ordinarily, this sworn declaration would establish valid service of process. "In New York, a process server's affidavit of service establishes a *prima facie* case of the account of the method of service, and thus, in the absence of contrary facts, [it is] presume[d] that [defendant] was properly served with the complaint." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

However, defendants contest the process server's averments with their own sworn declarations. *See, e.g.*, H. Ross Decl., Dkt. No. 15-3 ¶ 6 ("[M]y son, Matthew called me on the phone and . . . told me that a man came . . . to serve me with the papers, that [he] did not accept the papers, and that the man departed without leaving anything[.]"); Buel Decl., Dkt. No. 15-1 ¶ 4 ("I was not home remotely close to the time Mr. Russel [*sic*] says he served me there . . . I left my house at about 7:30 a.m. . . . [and] never returned home until roughly 3 p.m.").

Jessica Buel's declaration, in particular, contains factual allegations and purported proof that she could not have been present when Russell attempted to serve her with process on February 11, 2026. *See* Buel Decl., Dkt. No. 15-1 ¶ 5 ("At about noon, I . . . purchased a highchair . . . for my daughter. A copy of the receipt . . . is annexed hereto[.]"); *id.* ¶ 6 ("I arrived at [the ice cream shop] at roughly 1 p.m. and was there until about 2:15 p.m. While at the shop I took a picture of

my daughter in her new highchair at 1:07 p.m., a time-stamped copy of which is annexed hereto[.]").

At first blush, the information presented in these conflicting declarations as to the first round of service might suggest the need for an evidentiary hearing. *See Veeraswamy*, 765 F. Supp. 3d at 193 (quoting *Old Republic*, 301 F.3d at 57–58) ("Although '[a] defendant's sworn denial of receipt of service' can 'rebut[ ] the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing,' the defendant must swear to 'specific facts to rebut the statements in the process server's affidavits.'"); *see also Davis v. Musler*, 713 F.2d 907, 914 (2d Cir. 1983) (remanding for evidentiary hearing where defendants disputed presence at service location in "unequivocal language").

Importantly, however, the Second Circuit has repeatedly acknowledged that district courts have "considerable procedural leeway" when it comes to pre-trial motions asserting jurisdictional challenges. *See, e.g.*, *Dorchester*, 722 F.3d at 85 (explaining general boundaries of trial court's discretion in context of a challenge to personal jurisdiction); *Marine Midland Bank*, 664 F.2d at 904 (same).

In the 12(b)(5) context, evidentiary hearings will often be an inefficient use of judicial resources.[4] After all, the Second Circuit has held that Rule 4 is to be construed liberally "to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986). And even in the case of insufficient service, "the Court may dismiss the case or may, in its discretion, retain the case,

---

[4] To be sure, there may be times where an evidentiary hearing on service of process may prove to be necessary. *Compare, e.g.*, *Old Republic*, 301 F.3d at 57 (finding genuine dispute of fact in context of appeal from the entry of default judgment), *and Durukan Am., LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1164 (7th Cir. 2015) (collecting extra-circuit authorities involving hearings over service-of-process disputes), *with United States v. Mellon*, 719 F. App'x 74, 77 (2d Cir. 2018) (summary order) (concluding trial court was not required to hold an evidentiary hearing on service-of-process dispute).

quash service, and direct that service be effectuated properly." *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217 (S.D.N.Y. 2021) (collecting cases).

In this case, further factual development is unnecessary because plaintiff elected to re-serve defendants after they filed the instant motion. *See, e.g.*, *Cooke v. Berkshire Farm Ctr. & Servs. for Youth*, 2012 WL 668612, at *3–4 (E.D.N.Y. Feb. 29, 2012) (denying motion to dismiss for insufficient service where "plaintiff subsequently cured this defect" by re-serving defendants during pendency of motion and the court was "satisfied" that his "second attempt at service of process was proper"); *J.G. ex rel. J.G. v. Bd. of Educ. of Briarcliff Manor Union Free Sch. Dist.*, 2008 WL 3843523, at *5 (S.D.N.Y. Aug. 14, 2008) ("[D]espite [plaintiffs'] arguably defective initial attempt to provide service, [plaintiffs] have satisfied their service obligations by re-serving [defendant] within the . . . period provided for by Rule 4(m).").

Defendants do not dispute that they were each personally served on March 24, 2026 at their place of business. Instead, defendants argue that this second round of service violated this Court's local rules and was untimely. First, defendants argue that plaintiff's second round of service violated the local rules because it failed to include General Order #25 in the envelope of documents they received. Dkt. No. 21 at 1–2; Dkt. No. 23-1 ¶¶ 3, 4. Second, defendants argue that the second round of service was untimely under Local Rule 4.1 because they were served more than sixty days after the complaint was filed. Dkt. No. 19 at 6–7.

These arguments are rejected. At best, any alleged failure to include General Order #25 in the service packet is a technical defect in service that the Court may, in its discretion, excuse. *See Ass'n for Retarded Citizens of Conn., Inc. v. Thorne*, 68 F.3d 547, 553–54 (2d Cir. 1995) ("[D]istrict courts have 'inherent power to decide when a departure from its Local Rules should be excused or overlooked.'") (internal citation omitted); *see also* 4A Charles Alan Wright & Arthur

R. Miller, Federal Practice and Procedure § 1088, at 462 (3d ed. 2002) ("Only when the error actually results in prejudice to the defendant or demonstrates a flagrant disregard of the requirements of [Federal Rule of Civil Procedure] 4(a) . . . is the district court likely to rule that a failure to comply precisely with Rule 4(a) cannot be cured by amendment.").

The same is true of defendants' objection about timing.  Although Local Rule 4.1 and General Order #25 express a strong preference that service of process be completed within a sixty-day "expedited" period, Local Rule 4.1 further provides that "[i]n no event shall service of process be completed after the time specified in Fed. R. Civ. P. 4."  N.D.N.Y. L.R. 4.1(b).  Rule 4 of the Federal Rules of Civil Procedure provides that the court must dismiss the action without prejudice or order service be made within a specified time "if a defendant is not served within **90 days** after the complaint is filed."  FED. R. CIV. P. 4(m) (emphasis added).

Plaintiff correctly responds that he completed service within the maximum amount of time allowed under the local rules.  Dkt. No. 26 at 2.  Plaintiff completed his second round of service on Heather Ross and Jessica Buel on March 24, 2026, sixty-seven days after the complaint was filed—well within the ninety-day maximum prescribed by the local rules and the federal rules of civil procedure.  *Id.*

These technical defects aside, the Second Circuit has instructed that "Rule 4 of the Federal Rules is to be construed liberally 'to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.'"  *Romandette*, 807 F.2d at 311 (quoting *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)).  Courts in this Circuit have held that actions taken by defense counsel, including entering an appearance and litigating the case on a defendant's behalf, clearly indicate that the defendant had received "actual notice" of the complaint.  *See Burris v. Nassau Cnty. Dist. Att'y*, 2023 WL 6450398, at *7 (E.D.N.Y. Sept. 30, 2023) (citing *Sidney v.*

*Wilson*, 228 F.R.D. 517, 524 (S.D.N.Y. 2005)); *Soto v. Keenan*, 409 F. Supp. 2d 215, 216–17 (W.D.N.Y. 2006) (declining to dismiss complaint for insufficient service where "at least some of the defendants have apparently received notice . . . since the New York State Attorney General's Office entered an appearance[.]").

Here, defendants' technical arguments about allegedly deficient service have provided no basis to dismiss the action. To the contrary, defendants had actual notice, and the parties were undoubtedly familiar with each other well before the complaint was filed in this case, as exemplified by the slew of e-mails and demand letters dating back to August 2025 that were submitted to the Court as exhibits to plaintiff's opposition brief. *See generally* Dkt. Nos. 18-1–18-13.

For instance, in one e-mail sent on January 22, 2026, six days after the filing of the complaint, plaintiff's counsel asked Mr. Palmateer to confirm whether he represented each of the defendants and, if so, if he was authorized to accept service on defendants' behalf. Dkt. No. 18-12 at 3. Plaintiff's counsel attached the complaint to this e-mail. *Id.* Defendants' counsel replied the next day, stating, "Please direct your correspondence to me as their attorney," but ostensibly never answered whether or not he was authorized to accept service. *See id.* at 2.

Additionally, plaintiff's process server states in his declaration that when he arrived at Polar Bear Ice Cream & More on March 24, 2026 to complete the second round of service on Heather Ross and Jessica Buel, he saw the two women through the window, one of whom waved to him and directed him to enter through a side door. Dkt. No. 18-22 ¶¶ 52–69. When he entered, Heather Ross said, "We've been expecting you!" *Id.* ¶ 60. In short, defendants' conduct clearly demonstrates actual notice of the complaint.

Thus, "'given the Second Circuit's clearly expressed preference that litigation be resolved on the merits and its guidance that incomplete or improper service will lead the court to dismiss

- 14 -

the action unless it appears that proper service may still be obtained,' as well as the fact that [defendants] ha[ve] actual notice of the instant action, there is no basis to dismiss this case for failure to serve process." *Veeraswamy*, 765 F. Supp. 3d at 194 (internal citation omitted).

Accordingly, defendants' motion to dismiss pursuant to Rule 12(b)(5) will be denied. For the avoidance of doubt, the Court finds "good cause" to extend the deadline to effect service and direct plaintiff to re-serve defendants with process.[5] *See* FED. R. CIV. P. 4(m) ("[I]f the plaintiff shows good cause for the failure [to timely serve], the court must extend the time for service for an appropriate period.").

"In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay." *DeLuca*, 695 F. Supp. 2d at 66 (internal citations omitted). "Although an extension of time is required when good cause has been shown, a district court has wide latitude in deciding when to grant extensions absent good cause." *Mares v. United States*, 627 F. App'x 21, 23 (2d Cir. 2015) (summary order) (citing *Zapata v. City of New York*, 502 F.3d 192, 195–96 (2d Cir. 2007)). "Factors relevant to the exercise of this discretion include, *inter alia*, the relative prejudice to the parties (including whether the action would be barred by the statute of limitations and whether defendant had actual notice of the suit) and whether there is a 'justifiable excuse' for the failure properly to serve." *Id.*

As detailed above, plaintiff took reasonable efforts to serve defendants a second time on March 24, 2026, even if such service did not include General Order #25—at best, an excusable defect. And defendants do not dispute that they received the summons and complaint on March

---

[5] Even in the absence of good cause, the Court would use its discretionary authority to permit the extension. *See DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010) ("Under Rule 4(m), the Court must extend the time to serve if plaintiff has shown good cause, and may extend the time to serve even in the absence of good cause.").

24, 2026, or that they have already engaged counsel to make the instant motion. Defendants therefore have had "actual notice" of this action and stand to suffer little to no prejudice if a brief extension is granted. *See, e.g.*, *Byrd v. Town of DeWitt*, 698 F. Supp. 3d 379, 387 (N.D.N.Y. 2023) (Hurd, J.) (ordering re-service where although "defendants might have identified a technical defect in service, they have not really articulated any prejudice that might flow from that error"); *Dwulit v. Tactical, Scrapefix & Deer Mgmt. Sys. LLC*, 2024 WL 3413472, at *4 (S.D.N.Y. July 15, 2024) (noting that attempting re-service typically weighs in favor of plaintiff in good cause analysis).

Therefore, to resolve any possible outstanding service defect, the Court *sua sponte* directs plaintiff to serve Heather Ross and Jessica Buel with the summons, complaint, and General Order #25 by using one of the methods described in Rule 4(e) or, alternatively, by serving defendants' counsel. *See, e.g.*, *Hamza v. Yandik*, 2022 WL 976888, at *8 (N.D.N.Y. Mar. 31, 2022) (Kahn, J.) (acknowledging that courts have "substantial discretion" in directing substitute service pursuant to F.R.C.P. 4(e)(1) and CPLR § 308(5) and may exercise such discretion "particularly when defendants have participated in the litigation").

### C.    Cost Shifting

In his opposition brief, plaintiff asks the Court to "direct [d]efendants to reimburse [him] for all costs he has incurred associated with the multiple service efforts" because he requested they waive service pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure. Pl.'s Opp'n, Dkt. No. 18-25 at 15. Defendants, for their part, argue that plaintiff failed to meet the requirements for a valid request for waiver of service. Dkt. No. 19 at 8.

Under Rule 4, a plaintiff may notify an individual defendant that is subject to service under Rule 4(e), (f), or (h) that "an action has commenced" and "request that the defendant waive service of a summons." FED. R. CIV. P. 4(d)(1). The rule requires that the notice and request for waiver:

(A) shall be in writing and be addressed to the individual defendant
. . .;
(B) name the court where the complaint was filed;
(C) be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;
(D) inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;
(E) state the date when the request is sent;
(F) give the defendant a reasonable time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver; and
(G) be sent by first-class mail or other reliable means.

*Id.* Courts in this Circuit "typically require 'substantial' compliance with the requirements of Rule 4(d)(1)(A)–(G) rather than technical perfection." *Abadi v. United Airlines, Inc.*, 2025 WL 1636086, at *1 (S.D.N.Y. June 9, 2025) (collecting cases).

Here, however, plaintiff did not substantially comply with Rule 4 and is not entitled to reimbursement. First, plaintiff's counsel's e-mail is more accurately characterized as a request for a request for waiver of service: the e-mail asked defendants' counsel whether they would accept service on the defendants' behalf, stating "[i]f so, we will provide service waivers for your review and execution." Dkt. No. 18-17 at 2. Plaintiff did not provide the waiver form, address the request to the individual defendants, name the court where the complaint was filed, include two copies of the waiver and a prepaid means for returning the form, inform defendants of the consequences of waiving and not waiving service, or state the date when the request was sent as required by Rule 4(d)(1)(A)–(E).

Moreover, plaintiff did not give defendants a reasonable time of at least 30 days after the request was sent to return the waiver as required by Rule 4(d)(1)(F). Plaintiff sent the request on Thursday, January 22, 2026 at approximately 2 p.m. and requested a reply by Monday, January 26, 2026 at 12 p.m., providing defendants with only four days to respond. Dkt. No. 18-17 at 2.

And plaintiff first attempted to serve defendants with process on February 11, 2026, just 20 days after the initial e-mail. *See Kumaran v. Vision Fin. Mkts., LLC*, 338 F.R.D. 17, 19 (S.D.N.Y. 2021) (denying reimbursement motion where plaintiff "failed to meet the requirements of Rule 4(d)" by, *inter alia*, "arrang[ing] for personal service on [defendant]" less than thirty days after requesting a waiver by e-mail).

In sum, plaintiff is not entitled to reimbursement for the cost of serving defendants with process because he did not properly request a waiver of service under Rule 4(d). *See, e.g.*, *Abadi*, 2025 WL 1636086, at *1 (rejecting request for fees under Rule 4(d)(2) where plaintiff e-mailed waiver request to lawyers who had represented defendant but were not agents for service).

## V. CONCLUSION

As discussed above, this Court—like the Second Circuit—has a clear preference for re-solving disputes based on the merits. The parties are cautioned to refrain from engaging in games-manship that further unnecessarily expends the parties' and the Court's resources.

Therefore, it is

**ORDERED** that

1. Michael Ross is *sua sponte* **DISMISSED** as a defendant from this action without prej-udice to plaintiff's right to substitute a duly appointed executor or administrator of his estate pursuant to Federal Rule of Civil Procedure 25(a) should one be appointed;

2. Defendants' motion to dismiss (Dkt. No. 15) is **DENIED**;

3. Plaintiff is directed to serve defendants Heather Ross and Jessica Buel within FORTY-FIVE (45) DAYS of the date of this Order, and to file a certificate of such service with the Court; and

4.  Defendants are directed to answer the complaint within FOURTEEN (14) DAYS of the date of filing of the certificate of service.

The Clerk of the Court is directed to terminate the pending motion and set deadlines accordingly.

**IT IS SO ORDERED.**


Dated: June 11, 2026

    Utica, New York.

Anthony J. Brindisi
U.S. District Judge